**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DONALD R. GREEN, JR., <br><br> *Plaintiff*, <br><br> v. <br><br> STARBUCKS CORPORATION, <br><br> *Defendant*. | Civil Action No. 26 - 123 (LLA) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald R. Green, Jr. filed this pro se action against his former employer, Defendant Starbucks Corporation, alleging wrongful termination and violations of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 *et seq.* ECF No. 1-1. Pending before the court is Starbucks's motion to compel arbitration and stay proceedings. ECF No. 4. For the following reasons, the court grants the motion and stays the case pending arbitration.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed. *See Dist. No. 1, Pac. Coast. Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 456 (D.C. Cir. 2021) ("A motion to compel arbitration is decided on a summary judgment standard."). Mr. Green was hired as a Starbucks barista in November 2021. ECF No. 1-1, at 2; *see* ECF No. 4-1, at 10.[1] Since October 2014, Starbucks has required "as a condition of employment for certain positions that the

---

[1] When citing ECF Nos. 1-1, 4-1, 4-2, and 6, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

employee will be subject to an arbitration agreement."  ECF No. 4-1, at 3 ¶ 9; *see id.* at 121; *see generally* ECF No. 6.  In November 2021, Mr. Green received an offer of employment, *see* ECF No. 1-1, at 2; ECF No. 4-1, at 123, and during the onboarding process, he electronically signed the Starbucks Mutual Arbitration Agreement, *see* ECF No. 4-1, at 128-30; ECF No. 6, at 1 (Mr. Green stating that "[a]t the time of hire," he "signed an independent arbitration agreement that was valid for [his] contract of employment . . . with Starbucks store number 7759").  That agreement provides:

> Mutual Agreement to Arbitrate.  Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" that arise between me and Starbucks, its subsidiaries and related companies, and/or any current or former employee of Starbucks or a related company (collectively, "Starbucks").  "Covered Claims" are those brought under any statute, local ordinance, or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment.
>
> **Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court**.  The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law.

ECF No. 4-1, at 128.

Mr. Green began working as a barista primarily at Starbucks store number 7759 in Washington, D.C.  *Id.* at 6; ECF No. 6, at 2.  In July or August 2022, he was transferred to store number 23466.  ECF No. 4-1, at 6; ECF No. 6, at 2.  Mr. Green was terminated in October 2025.  ECF No. 1-1, at 3; ECF No. 4-1, at 6.  Mr. Green appealed his termination internally, but his appeal was denied.  *See* ECF No. 1-1, at 3, 5-6.

On December 5, 2025, Mr. Green, proceeding pro se, filed suit in the Superior Court of the District of Columbia, alleging that Starbucks had wrongfully terminated him and had violated OSHA during his term of employment. *See id.* at 2-4. Mr. Green seeks $8,260,000 in damages. *Id.* at 4. That same month, Starbucks's counsel twice notified Mr. Green that he had signed Starbucks's arbitration agreement and requested that Mr. Green dismiss his suit and commence arbitration. ECF No. 4-2, at 4, 6. Mr. Green did not respond, *see id.* at 2 ¶ 4, and Starbucks removed the action to this court on January 15, 2026, ECF No. 1. A week later, Starbucks moved to compel arbitration and stay proceedings pending the completion of arbitration. ECF No. 4. The court directed Mr. Green to respond, ECF No. 5, and Starbucks's motion is fully briefed, ECF Nos. 4, 6, 7.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a provision in a contract requiring the arbitration of disputes related to the contract "shall be valid, irrevocable, and enforceable." *Id.* § 2. The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). If a party subject to an arbitration agreement attempts to litigate a dispute in federal court, the opposing party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

As noted, "[a] motion to compel arbitration is decided on a summary judgment standard." *Dist. No. 1, Pac. Coast. Dist.*, 998 F.3d at 456. The court may accordingly grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment

as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see* Fed. R. Civ. P. 56(a).

### III.   DISCUSSION

Starbucks argues that Mr. Green agreed to submit any claims arising out of his employment to arbitration and that the instant action falls within the scope of the agreement.   ECF No. 4, at 9-11.  The court agrees.

Mr. Green does not dispute that he voluntarily signed a valid and enforceable agreement to arbitrate claims arising from his employment at Starbucks.  *See* ECF No. 6, at 1 ("At the time of hire with Starbucks Corporation, I the Plaintiff, signed an independent arbitration agreement that was valid for my contract of employment (Barista) with Starbucks store number 7759.").  Instead, he argues that the agreement applies only to his employment at the first Starbucks location he worked at, store 7759, and does not cover claims arising after his transfer to store 23466.  *See id.* at 2-3.   But the arbitration agreement expressly applies to claims against "Starbucks, its subsidiaries[,] and related companies . . . relating to [Mr. Green's] employment."  ECF No. 4-1, at 128.  Nothing in the agreement limits its applicability to claims arising from the store where Mr. Green began his job; rather, it is clear from the face of the agreement that it applies to claims arising from his term of employment at any Starbucks location.

Mr. Green also asserts that Starbucks failed to mention arbitration when he appealed his termination internally.  ECF No. 6, at 2.  While "a party may waive its right to arbitration by acting 'inconsistently with the arbitration right,'" including through "'active participation in a lawsuit,'" *Khan v. Parsons Glob. Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774-75 (D.C. Cir. 1987)), Mr. Green does not allege that Starbucks has engaged in any litigation activity inconsistent with its arbitration

right.  Starbucks's actions in its internal appeal process do not constitute "active participation" in litigation, and Mr. Green points to no authority suggesting otherwise.  *Cf. Partridge v. Am. Hosp. Mgmt. Co.*, 289 F. Supp. 3d 1, 17 (D.D.C. 2017) ("[A] party's refusal to settle a matter informally—rather than through either litigation or arbitration—is not regarded as intrinsically inconsistent with the right to arbitration such that it constitutes waiver.").  Moreover, Starbucks timely asserted its right to arbitration in this matter: shortly after Mr. Green filed suit in Superior Court, Starbucks twice reminded him of the arbitration agreement, *see* ECF No. 4-2, at 4, 6, and it moved to compel arbitration "at the first available opportunity" after removing the action to this court, *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011); *see Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 41 (D.D.C. 2008) (noting that "merely removing the action, without attempting to engage in discovery or to dispute plaintiff's claims on the merits, does not constitute active participation in the lawsuit").  Accordingly, considering the totality of the circumstances, *see Khan*, 521 F.3d at 425, the court has no reason to conclude that Starbucks waived its right to compel arbitration.

Finally, Mr. Green does not dispute that his alleged claims of wrongful termination and OSHA violations "fall within the broad coverage" of the arbitration agreement.  *Gonzales v. GrubHub Holdings, Inc.*, No. 23-CV-1650, 2023 WL 6037126, at *2 (D.D.C. Sep. 14, 2023), *aff'd*, No. 23-7123, 2024 WL 1222048 (D.C. Cir. Mar. 21, 2024); *see* ECF No. 4-1, at 128 (defining covered claims as "those brought under any statute, local ordinance, or common law relating to [Mr. Green's] employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment").  The court thus concludes that Mr. Green entered into a valid and enforceable arbitration agreement with Starbucks covering his claims in

this action, and it will grant Starbucks's motion to compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (explaining that the FAA "leaves no place for the exercise of discretion by a district court[] but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). The court will also stay the case pending the resolution of arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding.").

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Starbucks's Motion to Compel Arbitration and Stay Proceedings, ECF No. 4, is **GRANTED**, and this matter is **STAYED** pending the completion of arbitration. It is further **ORDERED** that the parties shall file a joint status report on or before January 28, 2027, updating the court on the status of arbitration.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   July 28, 2026

6